# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| AUSTIN CHAZ RAMSEY,          ] | |
| ] | |
| **Plaintiff,**          ] | |
| ] | |
| v.          ] | Case No.:  2:09-CV-1425-VEH |
| ] | |
| ARNOLD GAMBER and          ] | |
| HUGH NALL,          ] | |
| ] | |
| **Defendants.**          ] | |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

Plaintiff Austin Chaz Ramsey ("Ramsey"), a former football player for and current student of Auburn University, initiated this case against Defendants Arnold Gamber ("Gamber"), a former team trainer, and Hugh Nall, a former assistant coach, on July 16, 2009.  (Doc. 1).  This case was reassigned to the undersigned on July 20, 2009.  (Doc. 4).

The court has before it Nall's Motion To Dismiss For Improper Venue, Or Alternatively To Transfer Venue (the "Venue Motion") (Doc. 7), and Gamber's related Motion to Join Defendant Hugh Nall's Motion to Dismiss for Improper Venue, Or Alternatively to Transfer Venue (the "Joinder Motion") (Doc. 8), both of which were filed on August 10, 2009.  The Joinder Motion is due to be granted as

unopposed.

In the Venue Motion, Nall seeks to have this case dismissed or alternatively transferred to the Eastern Division of the Middle District of Alabama.[1]  Ramsey filed his opposition (Doc. 13) on August 20, 2009.  Hall filed his reply (Doc. 14) on August 28, 2009.  On August 29, 2009, Gamber joined in Nall's reply.  (Doc. 15). For the reasons explained below, the Venue Motion is due to be granted insofar as it requests that the case transferred to the Eastern Division of the Middle District of Alabama on the basis of forum non conveniens; otherwise the Venue Motion is due to be denied.

**II.   ANALYSIS**

   **A.   Preliminary Considerations**

The court notes that, without raising any specific issues or developing any arguments, Nall's Venue Motion indicates that he may subsequently challenge the existence of subject matter jurisdiction.  (Doc. 7 at 1 n.1).  Here, Ramsey bases subject matter jurisdiction upon diversity (28 U.S.C. § 1332) and federal question (28 U.S.C. § 1331).  (Doc. 1 ¶ 4).  This court has an independent duty to verify the existence of subject matter jurisdiction, and proceeds to examine whether the

---

[1] The court takes judicial notice that Auburn University is located in Lee County, Alabama. Further, Lee Country is part of the Eastern Division of the United States District Court for the Middle District of Alabama.  *See* http://www.almd.uscourts.gov/courtdir/divisions.htm (listing Chambers, Lee, Macon, Randolph, Russell, and Tallapoosa as forming Eastern Division).

requirements of diversity jurisdiction are satisfied in this instance.

Concerning the diversity of citizenship requirement, on the face of the complaint the plaintiff and the defendants are citizens of different states (*i.e.*, Mississippi and Alabama). (Doc. 1 ¶¶ 1-3). More specifically, Ramsey asserts that he is a citizen of Mississippi. (*Id.* ¶ 1). Ramsey further alleges that Gamber and Hall are citizens of Alabama. (*Id.* ¶¶ 2-3). Thus, Ramsey has adequately established that he and the defendants are diverse in their citizenship.[2] *See Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994) ("Diversity jurisdiction, as a general rule, requires complete diversity-every plaintiff must be diverse from every defendant.") (citation omitted).

As for the damages sought by Ramsey, the complaint states that "[t]he amount in controversy is satisfied and exceeds the jurisdictional threshold limits of this Court." (*Id.* ¶ 4). In actions <u>originating</u> in federal court, as here, the Eleventh Circuit has explained:

> In order to invoke a federal court's diversity jurisdiction, <u>a plaintiff must claim</u>, among other things, that <u>the amount in controversy exceeds $75,000</u>. 28 U.S.C. § 1332. . . . <u>A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith</u>. *St.*

---

[2] The court notes that even if Gamber or Nall is more properly classified as citizen of Georgia, the diversity of citizenship requirement between opposing parties is still satisfied. (*See, e.g.,* Doc. 1 ¶ 2 (alleging that Gamber "is now residing in Georgia"); Doc. 7 at Ex. A ¶¶ 3-4 (stating that Nall currently resides in Albany, Georgia, "is now employed" there, but that he "has not yet sold [his] home in Auburn" which is where his wife and daughter live)).

> *Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 590, 82 L. Ed. 845 (1938).
>
> Generally, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Red Cab Co.*, 303 U.S. at 289, 58 S. Ct. at 590. However, where jurisdiction is based on a claim for indeterminate damages, the *Red Cab Co.* "legal certainty" test gives way, and the party seeking to invoke federal jurisdiction bears the burden of proving by a preponderance of the evidence that the claim on which it is basing jurisdiction meets the jurisdictional minimum. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072-77 (11th Cir. 2000).

*Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003) (emphasis added) (footnote omitted). Therefore, *McKinnon* stands for the proposition that when a plaintiff files a case originally in federal court on the basis of diversity jurisdiction, the preponderance of the evidence standard applies to the court's evaluation of the amount in controversy requirement when the plaintiff fails to assert that the jurisdictional minimum has been met and the total amount of damages is unspecified. Otherwise, the *Red Cab* legal certainty test applies, and a dismissal for lack of jurisdiction is not appropriate unless it appears "to a legal certainty that the claim is really for less than the jurisdictional amount[.]" 303 U.S. at 289.

Here, Ramsey asserts negligence, wantonness, as well as other claims against Defendants stemming from physical injuries and emotional distress allegedly caused

by their purported interference with his prescribed medical treatment and related physical restrictions. (*Id.* ¶¶ 11-16). Moreover, Ramsey seeks both compensatory and punitive damages against Defendants. Furthermore, while Ramsey does not claim a specific amount of damages, his complaint affirmatively confirms that the amount in controversy exceeds the jurisdictional threshold, and there is no indication that such an assertion was made in bad faith. Under such circumstances, the court cannot conclude that it appears "to a legal certainty that the claim is really for less than the jurisdictional amount[.]" Accordingly, a dismissal is not appropriate under the *Red Cab* test, and diversity jurisdiction exists in this case.[3]

### B. Improper Venue

#### 1. Standard

28 U.S.C. § 1391 governs venue generally in federal court and provides in part:

**(a)** A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) <u>a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred</u>, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

---

[3] Because the court concludes that the exercise of diversity jurisdiction is proper, it does not reach the issue of federal question jurisdiction.

> **(b)** A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) <u>a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred</u>, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a)-(b) (emphasis added).

Although his complaint does not specify a particular venue subpart, Ramsey's responsive brief argues that venue is proper based upon § 1391(a)(2), *i.e.*, a subsection of the diversity venue provision. (Doc. 13 at 3-4). "Where a venue objection is raised by the defendant(s), the plaintiff bears the burden of establishing the propriety of venue." *Rogers v. Civil Air Patrol*, 129 F. Supp. 2d 1334, 1336 (M.D. Ala. 2001) (citation omitted).

### 2. Application

Here, the parties dispute whether "a substantial part of the events or omissions giving rise" to Ramsey's claims occurred in the Northern District of Alabama. More particularly, the venue inquiry turns upon whether the medical care that Ramsey received from non-party medical providers in this district (who Ramsey alleges imposed medical restrictions upon him that he alleges Defendants caused him to subsequently violate outside of this district while playing football for Auburn

University) constitutes a substantial portion of the circumstances formulating his claims.

As Nall procedurally contends, because venue is not proper in the Northern District, a dismissal of the case pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, or alternatively, a transfer under 28 U.S.C. § 1406 is appropriate:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). Because the court determines that a transfer of this case to the Middle District of Alabama is proper on forum non conveniens grounds, the Venue Motion is due to be denied as moot with respect to Nall's arguments regarding improper venue.

### C.   Forum Non Conveniens

#### 1.   Standard

28 U.S.C. § 1404 governs change of venue and states in relevant part:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The parties do not dispute that venue of this lawsuit is proper in the Eastern Division of the Middle District of Alabama; instead they disagree over

whether it is the more convenient forum for litigating this action.

"The purpose of the transfer provision 'is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense. . . .'"" *Haworth, Inc. v. Herman Miller, Inc.*, 821 F. Supp. 1476, 1479 (N.D. Ga. 1992) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Pursuant to 28 U.S.C. § 1404(a), "a district court may transfer any civil action to a district where it could have been brought for: (1) the convenience of the parties; (2) the convenience of the witnesses; and, (3) the interests of justice." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996).

It has generally been held that "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981),[4] *disagreement on other grounds recognized by Brumfield v. Jones*, 849 F.2d 152 (5th Cir. 1988). With regard to forum non conveniens, "Defendants . . . bear the burden of proof, and must make a convincing showing of the right to transfer." *Mason v. Smithkline Beecham Clinical Lab.*, 146 F. Supp. 2d 1355, 1363 (S.D. Fla. 2001). In making its determination, the court should consider, among other factors: "(1) the convenience of the witnesses; (2) the location

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.2 (11th Cir. 2005).

### 2.     Application

Here, Nall has met his burden in convincingly demonstrating that the Eastern Division of the Middle District of Alabama is the more efficient forum for conducting this litigation. Although the court has given weight to Ramsey's choice, in this instance the level of weight to be afforded is lessened by the fact that Ramsey's own state of citizenship is Mississippi and that the home district for both of the defendants is outside of this jurisdiction. *See, e.g., Haworth*, 821 F. Supp. at 1479 ("However, where the forum selected is not the home district for any of the parties involved in the action, plaintiff's original choice of forum is entitled to less weight.") (citations omitted); *Patel v. Howard Johnson Franchise Systems, Inc.*, 928 F. Supp. 1099, 1101 (M.D. Ala. 1996) ("Under normal circumstances, federal courts will accord great deference to the plaintiff's choice of forum <u>if the forum is in the district in which he</u>

9

or she resides.") (emphasis added) (citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989)).  The comparative degree of each forum's familiarity with the applicable law is not a pivotal factor as this case involves an intrastate transfer.

Also, while certain medical treatment and related directives did apparently occur within the Southern Division of the Northern District of Alabama (Doc. 1 ¶¶ 7-8, 10), the alleged actionable injuries suffered by Ramsey took place at Auburn University and were purportedly caused by both defendants who were formerly employed there.  Accordingly, the Eastern Division of the Middle District of Alabama is the primary locus of the operative facts and records involving Ramsey's claims, while the Southern Division of the Northern District is a secondary situs pertaining to the more tangential actions and instructions by non-party medical personnel.

Additionally, as substantiated by Nall's uncontradicted affidavit, Nall "expect[s] that the substantial majority of the necessary witnesses to this lawsuit reside in and around the Auburn/Opelika metropolitan area, as they would virtually all have been employed by or students of Auburn University between late-2007 and early-2009, with the single exception of Dr. Faulkner[.]"  (Doc. 7 at Ex. A ¶ 5).

Moreover, although Nall now works and resides in Albany, Georgia, he has not sold his home in Auburn, and his wife and daughter still live there.  (*Id.* ¶¶ 3-4).  Traveling to and staying in Auburn "to attend trial, hearings and any other court

proceedings in Opelika, Alabama, approximately 110 miles from [his] home in Albany" would be considerably more convenient than staying at a hotel in the further away location of "approximately 250 miles to the courthouse in Birmingham." (*Id.* ¶ 5).

Nall further points out that "[a]ll records and documents kept by Auburn University related to Mr. Ramsey or his allegations are located on the campus of Auburn University in Auburn." (*Id.* ¶ 6). Such materials would include "student and academic records, various athletic records and documents, and all medical records kept by the Auburn University football team and its team physicians and athletic training staff." (*Id.*).

By affidavit, Gamber similarly anticipates that a majority of the key witnesses will "reside in and around the Auburn-Opelika metropolitan area" including "various current or former members of the Auburn University football coaching staff and/or athletic department, current or former team physicians, current or former employees of the athletic training department, as a well as a number of Mr. Ramsey's former teammates and/or fellow students." (Doc. 7 at Ex. B ¶ 5). Akin to Nall, Gamber also substantiates that various categories of documents critical to the case are maintained in Lee County. (*Id.* ¶ 6).

Moreover, Gamber clarifies that his "current residence is in Lee County,

Alabama." (*Id.* ¶ 3). Accordingly, the Eastern Division of the Middle District of Alabama is his home district and the more convenient forum for him, as the courthouse is "only a few miles from [his] home." (*Id.* ¶ 5).

Also factoring into the court's analysis is Ramsey's undisputed status as a current Auburn University student, making the Eastern Division of the Middle District of Alabama more convenient to him while he is in school. Moreover, during those times when Ramsey is on break or out of school, neither the Middle District nor the Northern District of Alabama is particularly convenient to him as he is a citizen of Mississippi and would have to travel considerably to reach either forum.

Neither side has addressed the issue of compulsory process; however, to the extent that certain medical witnesses, such as Dr. Faulkner or "[o]ther physician witnesses for the Plaintiff [who] are practicing in Mississippi" (Doc. 13 at 7), are beyond the reach of the Middle District's subpoena power and will not voluntarily attend trial, the parties may still secure their testimony through a trial deposition, if necessary. Also, any medical records located within another district that cannot be obtained by agreement may alternatively be secured in advance of trial through a subpoena to produce them at a place within the geographical reach of the district court which issues the subpoena.

Without citing to any case authority, Ramsey contends that the court should

consider that "[a]ll the parties are represented by law firms located in Birmingham[5]" in its analysis. (Doc. 13 at 8). The court notes that CM/ECF indicates that attorneys from Birmingham, Alabama, Montgomery[6], Alabama, and Jackson, Mississippi are involved in the case. Therefore, no particular forum is exclusively connected to all the lawyers. Moreover, the court is not persuaded that the convenience of the attorneys (to the extent that it is even a relevant factor) would ever outweigh the convenience of the parties and the witnesses, which in this instance leans heavily in favor of the Middle District.

Finally, the court cannot envision how transferring this lawsuit to the Eastern Division of the Middle District of Alabama will result in any undue inconvenience or prejudice to Ramsey, especially as it is the same locale as his current student residence, and he is not a citizen of the Northern District. In fact, as Nall points out, the paucity of Ramsey's underdeveloped response to the forum non conveniens issue (Doc. 13 at 7-8) "all but concedes that this action should be transferred under the doctrine[.]" (Doc. 14 at 5); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (explaining that in context of summary judgment "the onus is upon the parties to formulate arguments"). In sum, the forum non conveniens factors and related evidence overwhelmingly favor a transfer of this litigation to the

---

[5] Which is within the Northern District of Alabama.

[6] Which is within the Middle District of Alabama.

Eastern Division of the Middle District of Alabama.

### III.   CONCLUSION

Accordingly, for the reasons stated above, Gamber's Joinder Motion is due to be granted, and Nall's Venue Motion is due to be granted in part on forum non conveniens grounds and otherwise denied.

**DONE** and **ORDERED** this the 17th day of September, 2009.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge